DAVID B. BARLOW, United States Attorney (#13117)
BRENT D. WARD, Trial Attorney, Criminal Division, U.S. Department of Justice (#3377)
ROBERT A. LUND, Assistant United States Attorney (#9579)
CY CASTLE, Assistant United States Attorney (#4809)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED
U.S. DISTRICT COURT
2012 AUG 22  A 11: 15
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | INDICTMENT |
|---|---|
| Plaintiff, | 18 U.S.C. §§ 371 (Conspiracy)(Count 1); 41 U.S.C. § 2102(a) (Government Procurement Fraud )(Count 2); |
| vs. | 41 U.S.C. § 2102(b) (Government Procurement Fraud)(Count 3); |
| DAVID YOUNG, CHRISTOPHER HARRIS, MICHAEL TAYLOR, and AMERICAN INTERNATIONAL SECURITY CORPORATION, | 18 U.S.C. § 201(b)(1)(B)(Bribery of a Public Official)(Counts 4-16); 18 U.S.C. § 201(b)(2)(B) (Acceptance of a Bribe by a Public Official)(Counts 17-29); 18 U.S.C. § 1343 (Wire Fraud)(Counts 30-45); |
| Defendants. | 18 U.S.C. §1956(h)(Conspiracy to Commit Money Laundering)(Count 46); 18 U.S.C. § 1956 (Money Laundering)(Counts 47-58); 18 U.S.C. § 1957 (Money Laundering)(Counts 59-65); 31 U.S.C. § 5324(a)(1) (Structuring Transactions)(Counts 66-72); 18 U.S.C. § 2 (Aiding and Abetting) |

The Grand Jury charges:

## **BACKGROUND**

At times relevant to this Indictment:

Case: 2:12-cr-00502
Assigned To : Campbell, Tena
Assign. Date : 08/22/2012
Description: USA v.

1

1.     Defendant DAVID YOUNG, an activated reservist with the rank of Lieutenant Colonel, served in Afghanistan with the United States Army at the Combined Joint Special Operations Task Force – Afghanistan (CJSOTF-A). CJSOTF-A oversaw all special operations forces in Afghanistan.

2.     While at CJSOTF-A, YOUNG served as the Director for Afghan National Security Force Partnering. In that position, his official duties included overseeing coordination between CJSOTF-A and another unit known as the Combined Security Transition Command-Afghanistan (CSTC-A), which engaged in transferring greater responsibility for Afghanistan's national security to the Afghans.

3.     In the spring of 2007, at the request of CJSOTF-A, CSTC-A solicited a contract to hire armorers and property book officers to manage Afghan supplies and equipment and to train Afghan commando troops to manage their own supplies and equipment. Because it deemed as urgent the need to train Afghan forces, the U.S. Army requested a limited number of bids for the contract from private entities selected by the Army. The contract required performance in Afghanistan by a U.S. company.

4.     YOUNG served as a current or former "public official" in that he acted for and on behalf of the United States Army. By virtue of his position, YOUNG possessed bid, proposal, and source selection information about a pilot contract related to logistics and weapons maintenance support for Afghan commando units. A designation number of W91B4M-07-C-0007 corresponded to the contract. The procurement and execution of this pilot contract, including modifications, together with four ensuing follow-on contracts, referred to in the aggregate hereinafter as the "Contract," constitute the subject of this Indictment.

2

5.     As a current or former official with responsibilities involving the contract, legal prohibitions barred YOUNG from personally benefiting from the Contract.

6.     Defendant AMERICAN INTERNATIONAL SECURITY CORPORATION (AISC), incorporated in state of Massachusetts, engaged in the business of providing contract security services to private and governmental organizations.

7.     Defendant MICHAEL TAYLOR resided in Massachusetts and served as President and owner of AISC. TAYLOR and YOUNG knew each other from their previous service together in the United States Army Special Forces.

8.     Defendant CHRISTOPHER HARRIS worked as a civilian contractor in Afghanistan. HARRIS and YOUNG knew each other from their previous service together in the U.S. Army Special Forces. HARRIS sometimes did business as Harris & Associates.

9.     TAYLOR, HARRIS, and AISC were private parties not authorized access to confidential bid, proposal, or source selection information about the Contract before the award of the Contract, under penalty of criminal sanctions.

10     YOUNG fraudulently disclosed procurement information about the pilot contract, including bid, proposal, and source selection information (hereinafter collectively referred to as "Protected Contract Information") to HARRIS, TAYLOR, and AISC prior to the award of the Contract in violation of law, as alleged hereafter.

11.     After receiving Protected Contract Information, AISC submitted a bid to the U.S. Army for the Contract and won the award of the Contract.

12.     AISC employed HARRIS as its "country manager" in Afghanistan under the Contract. While acting as country manager for AISC, HARRIS lived in Afghanistan and the United States,

3

including in St. George, Utah.

13.　World Wide Trainers ("WWT") was a company YOUNG formed ostensibly to recruit and provide civilian personnel to AISC and Harris for performance of the Contract. WWT functioned primarily to conceal and disguise the distribution of Contract proceeds to YOUNG in violation of bribery and money laundering laws.

14.　Welventure was a company YOUNG formed ostensibly to provide medical services overseas. Welventure functioned primarily to conceal and disguise the distribution of Contract proceeds to YOUNG in violation of bribery and money laundering laws.

15.　Hernando County Holdings (HCH) was a company YOUNG formed to purchase investment properties in and around Hernando County, Florida, using the monies YOUNG obtained from the Contract. C.S. and B.E. were business associates of YOUNG and the managers of HCH. YOUNG controlled the business affairs of HCH, negotiating the purchase and overseeing the management of some fourteen real properties. HCH functioned to conceal and disguise the distribution of Contract proceeds to YOUNG in violation of bribery and money laundering laws.

16.　R.B. was a business associate of YOUNG and assisted YOUNG in the management of Paper Mill Village, Inc. (PMV). YOUNG served as vice president and director of PMV, while R.B. served as president and director. PMV functioned to conceal and disguise the distribution of Contract proceeds to YOUNG in violation of bribery and money laundering laws.

17.　EFW was a law firm in New Hampshire that represented YOUNG in legal matters in New Hampshire and New York.

4

18.   Venue lies in the District of Utah (i) because under 18 U.S.C. § 3238, the defendants began and committed the offenses somewhere outside the territorial jurisdiction of any particular district and a defendant was arrested in the District of Utah; (ii) because under 18 U.S.C. § 3237, the defendants committed the offenses and an element thereof in the District of Utah; (iii) because and under 18 U.S.C. § 1956(i)(A), a defendant conducted financial and monetary transactions in the District of Utah.

## COUNT 1
### 18 U.S.C. § 371
### (Conspiracy)

## THE CONSPIRACY

19.   The grand jury incorporates by reference paragraphs 1 through 18 as if fully stated herein.

20.   From on or about January 2007 through on or about November 2011, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

### DAVID YOUNG,
### CHRISTOPHER HARRIS,
### MICHAEL TAYLOR, and
### AISC,

defendants herein, and others known and unknown to the grand jury, did knowingly combine, conspire, confederate, and agree together to commit offenses against the United States, that is:

    A.  Violations of Title 41 United States Code, Section 2102 (Government Procurement Fraud);

    B.  Violations of Title 18, United States Code, Section 201 (Bribery of a Public Official); and

C. Violations of Title 18, United States Code, Section 1343 (Wire Fraud);
all in violation of Title 18, United States Code, Section 371.

### OBJECT OF THE CONSPIRACY

21. The object of the conspiracy was for the individual defendants to obtain the
Contract for AISC through bribery and by fraudulent disclosure of Protected Contract
Information before the award of the Contract and in order to unlawfully enrich the defendants
through the following manner and means.

### MANNER AND MEANS OF THE CONSPIRACY

22. It was part of the conspiracy that, while in Afghanistan, YOUNG and HARRIS
agreed with TAYLOR to use Protected Contract Information to obtain an unfair competitive
advantage over other bidders in order to obtain the Contract.

23. It was further part of the conspiracy that, relative to his official duties associated
with the Contract, YOUNG possessed Protected Contract Information, and YOUNG participated
in establishing the government's price estimate and identified one or more of the limited number
of bidders.

24. If was further part of the conspiracy that HARRIS, TAYLOR and AISC give,
offer, and promise money to YOUNG in return for YOUNG using his official position to
influence the solicitation and award of the Contract.

25. It was further part of the conspiracy that before the award of the Contract, while in
Afghanistan, YOUNG disclosed Protected Contract Information to HARRIS, TAYLOR and
AISC, including information about the government's price estimate, source selection criteria,
competing bid information, and other confidential procurement information.

6

26.     It was further part of the conspiracy that after YOUNG disclosure of Protected Contract Information to TAYLOR, TAYLOR submitted a Contract bid to the U.S. Army on behalf of AISC for the benefit of HARRIS, YOUNG and TAYLOR.

27.     It was further part of the conspiracy that before the Contract award, TAYLOR sent emails to YOUNG and HARRIS, while in Afghanistan and elsewhere outside the United States, seeking assurances that the U.S. Army would award the Contract to AISC.

28.     It was further part of the conspiracy that HARRIS, YOUNG, TAYLOR and AISC used the Protected Contract Information to manipulate the contract bid and award process to help ensure that the U.S. Army awarded the Contract to AISC.

29.     It was further part of the conspiracy that YOUNG and HARRIS, while in Afghanistan and elsewhere outside the United States, sent emails to TAYLOR assuring him of YOUNG's influence over the award of the Contract.

30.     It was further part of the conspiracy that HARRIS, YOUNG and TAYLOR used the Protected Contract Information to submit a Contract bid for $899,782. That bid very closely matched the U.S. Army's price estimate for the Contract, which YOUNG assisted in establishing.

31.     It was further part of the conspiracy that because of the fraudulent acts of HARRIS, YOUNG and TAYLOR, on July 5, 2007, the U.S. Army awarded AISC a six-month pilot contract in the amount of $899,781.96.

32.     It was further part of the conspiracy that based on the initial fraud in the procurement of the pilot contract, HARRIS, YOUNG and TAYLOR obtained extensions of the pilot contract and four additional follow-on contracts.

7

33. It was further part of the conspiracy that HARRIS, while in Utah and places outside the United States, sent a series of emails containing invoices to AISC and TAYLOR for payments due from AISC.

34. It was further part of the conspiracy that AISC sent a series of emails containing invoices to the U.S. Army for payments due to AISC under the Contract.

35. It was further part of the conspiracy that AISC received approximately $54 million from the U.S. Army under the Contract.

36. It was further part of the conspiracy that TAYLOR and AISC paid HARRIS approximately $17.4 million.

37. It was further part of the conspiracy that AISC paid to TAYLOR approximately $1.7 million.

38. It was further part of the conspiracy that, at YOUNG'S direction and for YOUNG'S benefit, HARRIS paid approximately $7.8 million of the funds he received from AISC to nominee entities and individuals controlled by YOUNG.

39. It was further part of the conspiracy that, for YOUNG'S benefit, AISC paid more than $1.6 million to a nominee entity that YOUNG owned and controlled.

40. It was further a part of the conspiracy that HARRIS, YOUNG, TAYLOR and AISC used nominee entities and individuals to conduct and conceal the transfer of proceeds of their fraudulent acts among themselves. A "nominee entity" is an entity typically used to hide and conceal illegal financial or other transactions for the benefit of an individual; a "nominee individual" is a person who acts under the control and at the direction of another individual.

8

# OVERT ACTS

41.     In furtherance of the conspiracy and in order to accomplish its objectives, within the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere, the defendants committed, and caused to be committed, the following overt acts:

A.     Each of the acts and events set forth in paragraphs 1 through 40 of this Indictment individually constitute an overt act in furtherance of the conspiracy.

B.     On or about May or June 2007, while YOUNG and HARRIS were in Afghanistan, YOUNG approached HARRIS about pursuing the Contract. HARRIS declined the offer.

C.     On or about May or June 2007, while in Afghanistan, YOUNG contacted TAYLOR about AISC pursing the Contract, with HARRIS working for AISC. TAYLOR accepted the offer.

D.     On or about May or June 2007, YOUNG submitted AISC to the Army as a company the U.S. Army could solicit as one of a limited number of companies invited to bid on the Contract.

E.     Between on or about June 1, 2007 and on or about July 1, 2007, while functioning in his official capacity in Afghanistan, YOUNG assisted in identifying technical evaluation team members for the Contract bids.

G.     On or about June 16, 2007, before AISC submitted its bid, YOUNG, while in Afghanistan, used his official U.S. Army email account to forward to HARRIS, who was outside the United States, an email containing Protected Contract Information, including source

9

selection information.

H.     On or about May and June of 2007, YOUNG, while in Afghanistan, participated in writing a Teaming Agreement between HARRIS and AISC for HARRIS to work and be paid as the country manager for AISC under the Contract.

I.     On or about June 19, 2007, TAYLOR emailed HARRIS, who was in Afghanistan, to discuss the potential payment terms of the Teaming Agreement between AISC and HARRIS in the event AISC was awarded the Contract.

J.     On or about June 21, 2007, while in Afghanistan, YOUNG sent an email to HARRIS, who was also in Afghanistan, proposing a Teaming Agreement between AISC and HARRIS.

K.     On or about June 22, 2007, TAYLOR emailed HARRIS, who was in Afghanistan, with a copy of the email to YOUNG, discussing a revision of AISC's bid for the Contract and the price of a competing Contract bid, stating, "At that price the review panel should simply reject their offer because . . . . that price will not do the job." In addition, TAYLOR asked HARRIS and YOUNG for advice on AISC's proposal price.

L.     On or about June 22, 2007, TAYLOR emailed HARRIS, who was in Afghanistan, stating, in part, "I'd like to know if what Dave said about the price being under $1 m he has full control is still valid. Based on your email, it seems it does not hold true. Since we are far under $1 m we should win based on his word."

M.     On or about June 23, 2007, TAYLOR emailed YOUNG, who was in Afghanistan, stating, in part, "I hope you [YOUNG] are able to control your end."

N.     On or about June 29, 2007, TAYLOR emailed HARRIS, who was in

10

Afghanistan, asking, "Is it 2 companies including us? Any word from Dave if he is going to make it happen?" HARRIS replied, "He is working on it and is protecting as much as possible."

O.     Between on or about June 2007 and on or about July 2007, YOUNG and HARRIS, while in Afghanistan and elsewhere outside the United States, agreed to share the Contract profits they received from AISC.

P.     On or about November 15, 2007, the U.S. Army held a meeting in Afghanistan to discuss performance of the Contract. YOUNG attended this meeting on behalf of the U.S. Army and HARRIS attended on behalf of AISC. Shortly after the meeting, HARRIS emailed the meeting notes to TAYLOR.

Q.     On or about November 29, 2008, HARRIS, while in Utah, emailed an invoice to AISC for approximately $500,000 for payment as country manager.

R.     On or about February 4, 2009, HARRIS, while in Utah, emailed two invoices to AISC for approximately $530,000 and $500,000 for payment as country manager.

S.     On or about May 1, 2009, while in Utah, HARRIS emailed an invoice to AISC for approximately $20,000 related to the payment of interpreters working on the Contract.

T.     On or about January 30, 2009, while in Utah and acting on behalf of AISC, HARRIS emailed the U.S. Army seeking to close out various invoices for payments due under the Contract.

U.     On or about September 5, 2009, as part of the continuation of the Contract, HARRIS emailed YOUNG about a potential follow-on contract; all in violation of 18 U.S.C. § 371.

11

## COUNT 2

### 41 U.S.C. § 2102(a)
### (Government Procurement Fraud)

42.  The grand jury incorporates by reference paragraphs 1 through 41 as if fully stated herein.

43.  From on or about February of 2007 to on or about June 2007, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

### DAVID YOUNG,

defendant herein, who was a present official of the U.S. government, knowingly disclosed contractor bid proposal information and source selection information before the award of the Federal procurement contract to which the information related, to wit: the Contract, in violation of Title 41, United States Code, Sections 2102(a) and 2.

### COUNT 3
### 41 U.S.C. § 2102(b)
### (Government Procurement Fraud)

44.  The grand jury incorporates by reference paragraphs 1 through 43 as if fully stated herein.

45.  From on or about February of 2007 to on or about June of 2007, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

### CHRISTOPHER HARRIS,
### MICHAEL TAYLOR, and
### AISC,

12

defendants herein, knowingly obtained contractor bid proposal information and source selection information before the award of the Federal agency procurement contract to which the information related, to wit: the Contract, in violation of Title 41, United States Code, Sections 2102(b) and 2.

## COUNTS 4 – 16
## 18 U.S.C. § 201(b)(1)(B)
## (Bribery of a Public Official)

46. The grand jury incorporates by reference paragraphs 1 through 45 as if fully stated herein.

47. On or about the following dates, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

## CHRISTOPHER HARRIS,
## MICHAEL TAYLOR, and
## AISC,

defendants herein, directly and indirectly, corruptly gave, offered and promised a thing of value, that is, the below described money, to a public official, namely defendant YOUNG, and to other entities and persons, with intent to influence defendant YOUNG to commit and aid in committing, and to collude in and allow, a fraud, and to make an opportunity for the commission of a fraud, on the United States, with each payment constituting a separate count of the Indictment:

| Count | Date (on or about) | Nominee | Thing of Value (approximately) |
|-------|--------------------|---------|--------------------------------|
| 4 | March 13, 2008 | R.B. | $102,183.80 |
| 5 | April 16, 2008 | R.B. | $196,868.88 |
| 6 | October 3, 2008 | C.S. | $150,000 |

13

| 7 | November 14, 2008 | WWT | $50,000 |
|---|---|---|---|
| 8 | November 24, 2008 | EFW | $49,999.99 |
| 9 | February 5, 2009 | C.S. | $400,000 |
| 10 | February 19, 2009 | C.S. | $231,128.07 |
| 11 | May 11, 2009 | C.S. | $300,748.18 |
| 12 | June 10, 2009 | C.S. | $300,748.18 |
| 13 | August 12, 2009 | C.S. | $300,748.18 |
| 14 | December 10, 2009 | WWT | $374,006.16 |
| 15 | February 1, 2010 | WWT | $374,006.17 |
| 16 | April 5, 2010 | WWT | $374,006.17 |

all in violation of Title 18, United States Code, Sections 201(b)(1)(B) and 2.

## COUNTS 17-29
## 18 U.S.C. § 201(b)(2)(B)
### (Acceptance of a Bribe by a Public Official)

48.    The grand jury incorporates by reference paragraphs 1 through 47 as if fully stated herein.

49.    On or about the dates listed in each count below, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

### DAVID YOUNG,

defendant herein, being a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept, personally and through other entities and persons, something of value, to wit, the below described money, in return for being influenced to commit and aid in committing, and to collude and allow, a fraud, and make opportunity for the commission of a fraud on the United States, with each payment constituting a separate count of the Indictment:

14

| Count | Date (on or about) | Nominee | Thing of Value (approximately) |
|---|---|---|---|
| 17 | March 13, 2008 | R.B. | $102,183.80 |
| 18 | April 16, 2008 | R.B. | $196,868.88 |
| 19 | October 3, 2008 | C.S. | $150,000 |
| 20 | November 14, 2008 | WWT | $50,000 |
| 21 | November 24, 2008 | EFW | $49,999.99 |
| 22 | February 5, 2009 | C.S. | $400,000 |
| 23 | February 19, 2009 | C.S. | $231,128.07 |
| 24 | May 11, 2009 | C.S. | $300,748.18 |
| 25 | June 10, 2009 | C.S. | $300,748.18 |
| 26 | August 12, 2009 | C.S. | $300,748.18 |
| 27 | December 10, 2009 | WWT | $374,006.16 |
| 28 | February 1, 2010 | WWT | $374,006.17 |
| 29 | April 5, 2010 | WWT | $374,006.17 |

all in violation of Title 18, United 201(b)(2)(B) and 2.

## COUNTS 30-45
### 18 U.S.C. § 1343
### (Wire Fraud)

50.     The grand jury incorporates by reference paragraphs 1 through 49 as if fully stated herein.

51.     On or about the following dates, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan and elsewhere,

### DAVID YOUNG,
### CHRISTOPHER HARRIS,
### MICHAEL TAYLOR, and
### AISC

defendants herein, devised and intended to devise a scheme and artifice to defraud the United States and for obtaining money or property by means of materially false and fraudulent pretenses,

15

representations, and promises, and, for the purpose of executing the scheme and attempting to do so, caused the transmission of writings, signs, and signals in interstate and foreign commerce, with each such wire transmission being a separate count of the Indictment:

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission in Interstate or Foreign Commerce and Location of Sender and Recipient |
|---|---|---|
| 30 | June 21, 2007 | YOUNG (Afghanistan) emailed HARRIS (Afghanistan) a Teaming Agreement about HARRIS working as the country manager for AISC. |
| 31 | June 22, 2007 | TAYLOR (Massachusetts) emailed HARRIS (Afghanistan) about YOUNG's control over the Contract award. |
| 32 | June 23, 2007 | TAYLOR (Massachusetts) emailed YOUNG (Afghanistan) about his ability to control award of Contract. |
| 33 | June 29, 2007 | TAYLOR (Massachusetts) emailed HARRIS (Afghanistan) about YOUNG's control over the Contract. |
| 34 | September 6, 2008 | HARRIS (Utah) emailed YOUNG (Afghanistan) seeking YOUNG's help with Contract extension. |
| 35 | November 29, 2008 | HARRIS (Utah) emailed an invoice to AISC (Massachusetts) for payment as country manager. |
| 36 | January 3, 2009 | HARRIS (Utah) emailed an amendment to the Contract to AISC (Massachusetts). |
| 37 | January 30, 2009 | HARRIS (Utah) emailed two AISC invoices to the Army (Afghanistan and New York) for payment to AISC. |
| 38 | January 30, 2009 | HARRIS (Utah) emailed two AISC invoices to the Army (Afghanistan and New York) for payment to AISC. |
| 39 | February 4, 2009 | HARRIS (Utah) emailed two invoices to AISC (Massachusetts) for payment as country manager. |
| 40 | March 13, 2009 | HARRIS (Utah) emailed an invoice to AISC (Massachusetts) for payment as country manager. |

| 41 | May 1, 2009 | HARRIS (Utah) emailed an invoice to AISC (Massachusetts) for payment as country manager. |
|----|-------------|-----------------------------------------------------------------------------------------|
| 42 | May 11, 2009 | HARRIS (Utah) emailed a modification to the Contract to AISC and TAYLOR (Massachusetts). |
| 43 | May 12, 2009 | HARRIS (Utah) emailed two AISC invoices to AISC (Massachusetts). |
| 44 | July 6, 2009 | HARRIS (Utah) emailed vehicle lease invoice to AISC (Massachusetts) for payment. |
| 45 | September 6, 2009 | HARRIS (Utah) emailed vehicle lease invoice to AISC (Massachusetts) for payment. |

all in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

## COUNT 46
## 18 U.S.C. § 1956(h)
## (Conspiracy to Commit Money Laundering)

52.    The grand jury incorporates by reference paragraphs 1 through 51 as if fully stated herein.

## THE CONSPIRACY

53.    From on or about January 2007 through on or about June 2011, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan and elsewhere,

**DAVID YOUNG,**
**CHRISTOPOPHER HARRIS,**
**MICHAEL TAYLOR, and**
**AISC,**

the defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury to commit offenses against the United States those are, to wit:

17

(a)  to knowingly conduct and attempt to conduct financial transactions affecting

interstate commerce and foreign commerce, which transactions involved the proceeds of

specified unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. §

201(b)(1)(B), acceptance of a bribe by a public official in violation of 18 U.S.C. § 201(b)(2)(B),

and wire fraud in violation of 18 U.S.C. § 1343, while knowing that the transactions were

designed in whole or in part to conceal and disguise the nature, location, source, ownership, and

control of the proceeds of specified unlawful activity, and that while conducting and attempting

to conduct such financial transactions, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, all in violation of Title

18, United States Code, Section 1956(a)(1)(B)(i); and

(b)  to knowingly engage and attempt to engage, in monetary transactions by, through

or to a financial institution, affecting interstate and foreign commerce, in criminally derived

property of a value greater than $10,000, that is the transfer, transportation, and delivery of

money, as well as additional financial transactions in the form of the deposit and subsequent

withdrawal of money into and from accounts at financial institutions, electronic transfers

between bank accounts, and domestic wire transfers initiated from bank accounts, such property

having been derived from a specified unlawful activity, that is, bribery of a public official in

violation of 18 U.S.C. § 201(b)(1)(B), acceptance of a bribe by a public official in violation of

18 U.S.C. § 201(b)(2)(B), and wire fraud in violation of 18 U.S.C. § 1343, all in violation of

Title 18, United States Code, Section 1957.

## OBJECT OF THE CONSPIRACY

54.     The object of the conspiracy was to conceal and disguise the location, source,

ownership, and control of the proceeds of the bribery of a public official, acceptance of a bribe by

a public official and wire fraud; and to spend the proceeds of the fraud for the benefit of

YOUNG, HARRIS, TAYLOR and AISC through the following manner and means.

## MANNER AND MEANS OF THE CONSPIRACY

55.     It was part of the conspiracy that the defendants caused the U.S. Army to wire

transfer approximately $54 million to AISC's Mellon Bank account as payments under the

Contract.

56.     It was further part of the conspiracy that YOUNG and HARRIS agreed to share a

portion of the Contract proceeds AISC paid to HARRIS.

57.     It was further part of the conspiracy that HARRIS, YOUNG and TAYLOR caused

AISC to initiate payments owed to it under the Contract by emailing invoices to the U.S. Army.

58.     It was further part of the conspiracy that HARRIS initiated payment from AISC to

his USAA Savings Bank account by emailing invoices to AISC.

59.     It was further part of the conspiracy that from on or about November 2007 to and

including October 2010, the defendants caused AISC to make numerous wire transfers in

amounts over $10,000, totaling approximately $17.4 million, from its Mellon Bank account to

HARRIS' USAA Savings Bank account.

60.     It was further part of the conspiracy that HARRIS, at the direction of YOUNG,

made several payments from YOUNG'S share of the money to the law firm of EFW to represent

YOUNG in legal matters in New Hampshire and New York.

19

61.	It was further part of the conspiracy that HARRIS, at the direction of YOUNG, transferred YOUNG's share of the money to a number of nominee entities and individuals YOUNG controlled for the benefit of YOUNG, because YOUNG could not legally receive such payments, directly or indirectly, as a present or former officer in the U.S. Army with an official role in the Contract.

62.	It was further part of the conspiracy that between on or about December 2007 to on or about November 2010, HARRIS, at the direction of YOUNG, made a series of wire transfers totaling approximately $7.8 million of Contract proceeds for the benefit of YOUNG to several of YOUNG's nominee entities – WWT, Welventure and HCH -- and nominee individuals – R.B. and C.S.

63.	It was further part of the conspiracy that AISC paid a portion of YOUNG's share of the Contract proceeds directly to a nominee entity YOUNG owned and controlled.

64.	It was further part of the conspiracy that HARRIS made wire transfers to YOUNG's nominee entities and individuals by directing payments from his USAA Savings Bank.

65.	It was further part of the conspiracy that between on or about March 2009 and on or about August 2010 that YOUNG caused HCH, C.S., and B.E. to purchase approximately fourteen houses for approximately $3 million in Florida for the benefit and on behalf of YOUNG at the direction of YOUNG. The money to purchase these houses originated from payments AISC made to HARRIS using funds received from U.S. Army.

66.	It was further part of the conspiracy that Young caused these nominee entities and individuals to divert and redistribute the proceeds from the Contract through a convoluted web of

20

financial transactions for the purpose of concealing and disguising the nature, location, source, ownership, and control of the proceeds from the Contract, and for distributing the proceeds for YOUNG's financial benefit, all in violation of 18 U.S.C. § 1956(h).

## COUNTS 47-58
### 18 U.S.C. § 1956(a)(1)(B)(i)
### (Money Laundering)

67.    The grand jury incorporates by reference paragraphs 1 through 66 as if fully stated herein.

68.    On or about the dates listed in each count below, within the Central Division of the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit: Afghanistan, and elsewhere,

### DAVID YOUNG,
### CHRISTOPHER HARRIS,
### MICHAEL TAYLOR, and
### AISC,

defendants herein, knowingly conducted, and aided, abetted, counseled, commanded, induced and procured, the following financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, with each such transaction constituting a separate count of the Indictment:

| Count | Date (on or about) | Transaction Amount (approximately) | Specified Unlawful Activity |
|-------|--------------------|------------------------------------|-----------------------------|
| 47    | June 26, 2008      | Wire Transfer of $100,000 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |

21

| 48 | October 3, 2008 | Wire Transfer of $150,000 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
|----|----|----|----|
| 49 | October 27, 2008 | Wire Transfer of $40,000 from HARRIS to WWT. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 50 | November 14, 2008 | Wire Transfer of $50,000 from HARRIS to WWT. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 51 | February 5, 2009 | Wire Transfer of $400,000 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 52 | February 19, 2009 | Wire Transfer of $231,128.07 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 53 | May 11, 2009 | Wire Transfer of $300,748.18 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 54 | June 10, 2009 | Wire Transfer of $300,748.18 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 55 | August 12, 2009 | Wire Transfer of $300,748.18 from HARRIS to C.S. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 56 | December 10, 2009 | Wire Transfer of $374,006.17 from HARRIS to WWT. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 57 | February 1, 2010 | Wire Transfer of $374,006.17 from HARRIS to WWT. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 58 | April 5, 2010 | Wire Transfer of $374,006.17 from HARRIS to WWT. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |

all in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 59-65
### 18 U.S.C. § 1957
### (Money Laundering)

69. The grand jury incorporates by reference paragraphs 1 through 66 as if fully stated herein.

70.    On or about the dates listed for each count below, within the Central Division of

the District of Utah, and at a place outside the territorial jurisdiction of the United States, to wit:

Afghanistan and elsewhere,

**DAVID YOUNG,**
**CHRISTOPHER HARRIS**
**MICHAEL TAYLOR, and AISC,**

defendants herein, knowingly engaged, and aided, abetted, counseled, commanded, induced and

procured, in the following monetary transactions and aided and abetted involving funds that were

the proceeds of criminally derived property and had a value in excess of $10,000, and were

derived from a specified unlawful activity, with each such transaction constituting a separate

count in the Indictment:

| Count | Date (on or about) | Transaction Amount (approximately) | Specified Unlawful Activity |
|---|---|---|---|
| 59 | December 6, 2007 | Wire Transfer of $14,996.36 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 60 | December 11, 2007 | Wire Transfer of $14,996.36 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 61 | December 19, 2007 | Wire Transfer of $14,996.36 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 62 | December 19, 2007 | Wire Transfer of $29,992.76 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 63 | December 26, 2007 | Wire Transfer of $27,500 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 64 | March 13, 2008 | Wire Transfer of $102,183.80 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |
| 65 | April 16, 2008 | Wire Transfer of $196,868.88 from HARRIS to R.B. | 18 U.S.C. §§ 201 (Bribery) and 1343 (Wire Fraud) |

all in violation of Title 18, United States Code, Sections 1957(a) and 2.

## COIUNTS 66-72
### 31 U.S.C. § 5324
### (Structuring Financial Transactions)

71.    The grand jury incorporates by reference paragraphs 1 through 70 as if fully stated herein.

72.    On or about the dates listed in each count below, within the Central Division of the District of Utah,

### CHRISTOPHER HARRIS,

defendant herein, knowingly structured the following currency transactions knowing of the domestic financial institution's legal obligation to report transactions in excess of $10,000, for the purpose evading that reporting obligation, with each such transaction constituting a separate count in the Indictment:

| Count | Date (on or about) | Amount (approximately) | Transaction | Payee | Institution and Location |
|-------|--------------------|------------------------|-------------|-------|--------------------------|
| 66 | May, 1, 2009 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 67 | October 9, 2009 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 68 | November 4, 2009 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 69 | November 10, 2009 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 71 | December 4, 2009 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 71 | January, 11 2010 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |
| 72 | February 25, 2010 | $9,000 | Cash withdrawal | HARRIS | America First Credit Union St. George, Utah |

all in violation of Title 31, United States Code, Sections 5324 and 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

As a result of committing the felony offenses alleged in Counts 1 through 45 of this indictment, which are punishable by imprisonment for more than one year, the defendants shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461, and 18 U.S.C. § 982(a)(1) any and all property, real and personal, constituting proceeds deriving from violations of 18 U.S.C. §§ 201, 371, 1343, 1956, and 1957, and pursuant to 18 U.S.C. § 982(a)(1) any and all property involved in, used, or intended to be used in any manner or part to commit and to facilitate the commission of a violation of 18 U.S.C. §§ 1956 and 1957, and any property traceable thereto, including but not limited to the following:

- Funds and monies of $5,203,196.80 seized from the account at Mellon Trust Bank in the name of American International Security Corporation, Account No. XXXX3588;

- Funds and monies of $5,732.73 seized from the account at Bank of America in the name of World Wide Trainers, Account No. XXXX1769;

- Funds and monies of $438,399.99 seized from the account at Bank of America in the name of Paper Mill Village, Account No. XXXX1424;

- Funds and monies of $4,201.55 seized from the account at Bank of America in the name of Welventure, Account No. XXXX1686;

- Funds and monies of $128,861.12 seized from the account at Bank of America in the name of Welventure, Account No. XXXX1699;

- Funds and monies of $170,000 seized from the account at Bank of America in the name of World Wide Trainers, Account No. XXXX1764;

- Funds and monies of $20,649.95 seized from the account at Bank of America in the name of Hernando County Holdings (HCH), Account No. XXXX1356;

- Funds and monies of $18,787 seized from the account at Bank of America in the name of HCH, Account No. XXXX1407;

- Funds and monies of $730,000 seized from the account at Bank of America in the name of Welventure, Account No. XXXX1757;

- Funds and monies of $145,000 seized from the account in the name of Woodruff and Company at SunTrust Bank, Account No. XXXX3063;

- Real property at 45 Pleasant Street, Alstead, New Hampshire;

- Real property at 1149 West 2320 South, St. George, Utah;

- Real property at 1424 West Summer Poppy Drive, St. George, Utah;

- Real property at Lot 16 Tonaquint Terrace located at 1200 West 2320 South, St. George, Utah;

- Real property at 3511 Casa Court, Hernando Beach, Florida;

- Real property at 4004 Centavo Court, Hernando Beach, Florida;

- Real property at 4072 Pine Dale Court, Hernando Beach, Florida;

- Real property at 4483 Flounder Drive, Hernando Beach, Florida;

- Real property at 4115 Des Prez Court, Hernando Beach, Florida;

- Real property at 4054 Flamingo Blvd, Hernando Beach, Florida;

- Real property at 3174 Gulf Winds Circle, Hernando Beach, Florida;

- Real property at 3371 Gulf Winds Circle, Hernando Beach, Florida;

- Real property at 3312 Gulf View Drive, Hernando Beach, Florida;

- Real property at 3166 Gulf View Drive, Hernando Beach, Florida;

- Real property at 7332 Grand Blvd, New Port Richey, Florida

- Real property at Parcel Number 32-25-16-0350-00B00-0010, New Port Richey, Florida;

- Real property at 3223 Hibiscus Drive, Hernando Beach, Florida;

- Real property at 3339 Gulf Winds Circle, Hernando Beach, Florida;

26

- Real property at 4104 Pine Dale Court, Hernando Beach, Florida;

- Real property at 110-4350 Ponderosa Drive, Peachland, British Columbia, V0H 1X5, Canada – Parcel No. 026-958-406;

- Lake Seafloat airplane, model: LA-4-200, Serial Number 576, Registration Number 16RC;

- One 2006 Hummer H3, VIN: 5GTDN136468257156;

- One 2002 Sea Ray Mercruiser, SERV3186A202, Title 87282109;

- One 1999 Jaguar, VIN: SAJGX2040XC040534;

- 225 one-ounce American Eagle Gold coins; and

- 175 one-ounce South African Gold Krugerrand coins.

MONEY JUDGMENT in the approximate amount of Fifty-Four million dollars ($54,000,000), representing the value of the proceeds obtained by the defendants in connection with the above-referenced offenses

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

27

It is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

_____/S/_____

FOREPERSON OF THE GRAND JURY          DATE

DAVID B. BARLOW
United States Attorney

_____

BRENT D. WARD
Trial Attorney, Criminal Division
U.S. Department of Justice
ROBERT A. LUND
Assistant U.S. Attorney
CY CASTLE
Assistant U.S. Attorney